UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HROTHGAR INVESTMENTS, LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>CHADWICK HOUSER,<br><br>Defendant. | Case No.  15-cv-01116-JCS<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 13 |

## I.      INTRODUCTION

In this action, Plaintiff Hrothgar Investments, Limited ("Hrothgar") seeks to recover funds it transferred to Defendant Chadwick Houser ("Houser") under a Consultancy Services Agreement ("Agreement").  Hrothgar filed its complaint on March 10, 2015 asserting claims for breach of contract, money had and received, conversion, and fraud.  Houser failed to appear or answer the complaint and the Clerk entered default against him on May 13, 2015.  Dkt.  No. 11.  Presently before the Court is Hrothgar's Motion for Entry of Default Judgment ("Motion").  Because Houser has not appeared or consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c), the case shall be reassigned to a district court judge for disposition with the following Report and Recommendation.  A hearing was held on the Motion, and thereafter Plaintiff submitted supplemental materials in support of the Motion. For the reasons stated below, the Court RECOMMENDS that the Motion be GRANTED.

## II.      BACKGROUND

### A.      The Complaint

Hrothgar is a company incorporated in the British Virgin Islands.  Complaint ¶ 1.  Houser is alleged to be a citizen of the State of California.  *Id.* ¶ 2.  Hrothgar asserts that there is federal

jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.  Complaint ¶ 3.  Hrothgar asserts that venue is proper in the Northern District of California under 28 U.S.C. § 1391 because Houser resides in the Northern District of California.  *Id.* ¶ 4.

Hrothgar alleges that on September 1, 2011, it entered into the Agreement with Houser. According to the Complaint, "[t]he Agreement provides for Hrothgar's engagement of Houser as a consultant to advise and manage the acquisition and development of a villa complex in Bali, Indonesia (the 'Villa Complex') for Hrothgar." *Id.* ¶ 6.  Hrothgar further alleges that under the Agreement,  it was to transfer funds to Houser to acquire and develop the Villa Complex, along with a consultancy fee to Houser, based on an "approved formal budget." *Id.* ¶ 7.  The funds and fee were to be deposited in a bank account with BII Bank Indonesia ("Account") "in Houser's name as consultant, but for  the benefit of Hrothgar." *Id.*  The Agreement had a twelve-month term. *Id.* ¶ 8.

Hrothgar alleges it wired $230,000.00 United States Dollars ("Funds") via telegraphic transfers to the Account "to be held in trust for Hrothgar and used to resolve disputes with Lisa Liliana ["Liliana"] and Mark Savage ["Savage"] with respect to title and ownership of the land on which the Villa Complex was to be situated." *Id.* ¶ 9.  According to Hrothgar, Houser did not resolve the title and ownership disputes, Hrothgar did not acquire the Villa, and Houser did not utilize the Funds for purposes authorized by Hrothgar. *Id.* ¶ 10.  Therefore, it alleges, Houser was obligated to return the Funds to Hrothgar. *Id.* ¶ 10.  Hrothgar alleges it has made several demands that Houser return the Funds, beginning on November 30, 2012. *Id.* ¶ 11.  According to Hrothgar, Houser has acknowledged these demands and repeatedly promised to refund  the $230,000, but has failed to do so to date. *Id.*  On June 16, 2014, Houser allegedly agreed to provide Hrothgar with power of attorney for the Account but has failed to do so. *Id.* ¶ 12.

In the Complaint, Hrothgar asserts the following claims: 1) Breach of contract based on the allegation that Houser failed and refused to return the Funds, deposited into the Account solely to resolve title and ownership disputes for the Villa land, at the expiration of the Agreement; 2) Money had and received based on the allegation that Houser received and retained money that "in

equity and good conscience belongs to Hrothgar;" 3) Conversion based on the allegation that Houser has wrongfully taken control and/or disposed of money belonging to Hrothgar; and 4) Fraud based on the allegation that Houser had no intention of performing his promise to use the transferred Funds only to resolve title and ownership disputes over the land for the Villa Complex at the time Houser made the promise.  Hrothgar requests actual damages or restitution in the amount of $230,000, pre-judgment and post-judgment interest, costs, reasonable attorneys' fees, and punitive damages.  Complaint ¶¶ 15-16, 22, 28, & 38.

**B.    The Motion**

In the Motion, filed on May 18, 2015, Hrothgar asked the Court to enter default judgment on the basis that Houser has failed to appear and default has been entered against him pursuant to Fed. R. Civ. P. 55(a).  Hrothgar further requested that the Court award  $230,000 in principal, interest "at the statutory rate from November 30, 2012, until paid in full," and attorneys' fees and costs.[1]  Motion at 1.

In support of the Motion, Hrothgar provided a declaration by Steve Diggle, the principal of Hrothgar, that closely tracks the allegations in the Complaint.   *See* Dkt. No. 13-1.  In addition, in response to the Court's request, Hrothgar submitted a copy of the Agreement (Dkt. No. 16-1), which includes the following provisions relevant to the Motion:

1.    SERVICES

1.1    The Company shall engage the Consultant to provide the services described in Annex A as may be amended by the Company from time to time at its discretion and such other services as may be agreed between the parties hereto (The "Services").

1.2    The Consultant shall report to the officer set out in Annex A (the "Contact Personnel").

2.    TERM

2.1    The Consultant shall commence providing the Services for the period set out in Annex A (the "Term") or until this

[1] At the June 26, 2015 hearing, Hrothgar stipulated that it is not seeking an award of attorneys' fees.

3

Agreement is terminated in accordance with clause 5 below.

. . .

3.    FEES AND EXPENSES

3.1    In consideration of the Services rendered by the Consultant, the Consultant shall be paid the consultancy fee set out in Annex A (the "Fee").

3.2    The Fee and Expenses shall be payable by the Company to the Consultant in the manner set out in Annex A (the "Mode of Payment").

. . .

GOVERNING LAW AND JURISDICTION

This Agreement shall be governed by and constructed in accordance with the laws of Singapore and the Parties agree to be subject to the non-exclusive jurisdiction of the Singapore courts.

Agreement.

Annex A to the Agreement provides the following additional terms:

Clause 1.1

Services: To advise and manage on the acquisition and development of villa in Bali.

Clause 1.2

Contact Personnel: Stephen Diggle

Clause 2.1

Term: 12 months

Clause 3.1

Fee: Based on approved monthly budget

Clause 3.2

Mode of Payment: Upon receipt of monthly budget and supporting invoices on every month end

[Method of payment]: Telegraphic Transfer to provided BII Bank account held under Consultant Name

*Id.*

At the hearing, the Court asked Plaintiff to: 1) provide evidence that the address where Houser was served is his usual place of abode; 2) identify the specific costs it seeks to recover and provide evidence in support of its cost request; 3) provide evidence showing that Singapore contract law is similar to California contract law; and 4) provide additional information about the nature of the duties Houser was to perform so that the Court could ensure that the $230,000  was not intended for an improper purpose.   Following the Motion hearing, Plaintiff submitted an additional brief responding to the questions posed by the Court at the hearing, as well as supplemental declarations by Roger L. Cohen (addressing the first three issues) and Albert Verdicchio (addressing the fourth issue).  *See* Docket Nos. 20-22.  Plaintiff also submitted a revised Proposed Order seeking: 1) $230,000.00 in principal; 2) $60,043.63 in prejudgment interest through July 10, 2015, calculated at a rate of 10% per annum; 3) $651.50 in costs for a total judgment amount (as of July 10, 2015) of $290,695.13; and 4) postjudgment interest at the rate of .27% per annum.  Dkt. No. 20-1.

## III.    ANALYSIS

### A.    Venue

Pursuant to 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  As Houser resides in this district, venue is proper.[2]

### B.    Legal Standard for Entering Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  The Court may

---

[2] Although the parties agreed to the non-exclusive jurisdiction of the Singapore courts in the Agreement, venue is proper because the requirements of § 1391 are met.  *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S.Ct. 568, 578 (2013) ("venue is proper so long as the requirements of §1391(b) are met, irrespective of any forum-selection clause").  While a valid forum-selection clause may be enforceable under 28 U.S.C. § 1404, *see id*. at 579, the forum-selection clause here is non-exclusive and therefore does not require that the case be transferred to Singapore.  In any event, any objection Houser may have had on the basis of venue has been waived by his default.  *See  JBR, Inc. v. Cafe Don Paco, Inc*.,  No. 12-cv-02377 NC,  2014 WL 5034640, at *11 (N.D.Cal., Aug. 25, 2014).

not enter default judgment against a minor or incompetent person unless he or she is adequately represented. *Id.* A plaintiff seeking default judgment also must aver that the defendant is not in military service entitled to the benefits of the Servicemembers Civil Relief Act of 2003. *See* 50 App. U.S.C.A. § 521(b)(1). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed true. Fed. R. Civ. Proc. 8(b)(6).

A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, courts are instructed to consider several facts in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In reviewing the plaintiff's substantive claims and the sufficiency of the complaint, the factual allegations, except those concerning damages, are deemed to have been admitted by the non-responding party. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### 1. Adequacy of Service of Process

As a preliminary matter, where entry of default judgment is requested, the Court must determine whether service of process was adequate. *Bank of the West v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). The Court concludes that service was proper.

Federal Rule of Civil Procedure 4(e)(2)(b) allows for substitute service by "leaving a copy [of the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Substituted service has been uniformly upheld

where the absent defendant was served at his usual place of abode in the state. *Milliken v. Meyer*, 311 U.S. 457, 462-63 (1940). Here, Hrothgar has submitted a certificate of service stating, under penalty of perjury, that the process server delivered a copy of the Summons and Complaint to 2210 Mar East St., Belvedere-Tiburon, CA 94920 (the "Mar East Address"). The Mar East Address is Houser's "usual place of abode," and a copy of the Complaint was left with Houser's wife. *See* Dkt. No. 8; *see also* Cohen Decl. ¶¶ 3-12. Therefore, service of process was proper under Rule 4(e)(2)(b).

### 2. Jurisdiction

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has the affirmative duty to determine whether it has jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(4) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship; Hrothgar is a citizen of a foreign country (pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ") and Houser is a citizen of California. *See* Complaint ¶ 3; Cohen Decl., ¶¶ 3-12. In addition, Houser is subject to personal jurisdiction because he is citizen of California and he was served in California. *ACS Recovery Servs., Inc. v. Kaplan*, No. C 09-01304 JSW, 2010 WL 144816, at *4 (N.D. Cal. Jan. 11, 2010) (citing *Milliken*, 311 U.S. at 462-63).

### 3. *Eitel* Factors

Having found that service was adequate and that the Court has jurisdiction, the Court considers the factors set forth in *Eitel*. The Court concludes these factors, on balance, support entry of default judgment.

#### a. Possibility of prejudice to plaintiff

The first factor established by the Ninth Circuit in *Eitel* considers whether the plaintiff would be prejudiced by denial of default judgment. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). Hrothgar will be prejudiced by denial of default judgment. Although there may be an alternative forum in Singapore, there is nothing in the record to suggest

1    that Houser is any more likely to respond to an action there.  Thus, if this Court denies Hrothgar's

2    request for default judgment, Hrothgar will be left without a remedy.  *See PepsiCo, Inc. v.*

3    *California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Accordingly, this factor

4    weighs in favor of entry of default judgment.

5                    b.   Merits of plaintiff's claims and sufficiency of complaint

6          Courts also must consider the sufficiency of the allegations and the substantive merits of

7    the plaintiff's claims to determine whether entry of default judgment is warranted.  *Eitel*, 782 F.2d

8    at 1471.  Here, the Court must address the preliminary question of whether to evaluate the claims

9    under the law of Singapore or California.  Although the contract between Hrothgar and Houser

10   specifies that it shall be "governed by and constructed in accordance with the laws of Singapore,"

11   Hrothgar has relied on California law in the Motion.

12                    i.   Whether the Court Should Apply Singapore or California Law

13         When confronted with a choice-of-law question, a federal district court sitting in diversity

14   applies the choice-of-law rules of the forum state to determine which state's substantive law to

15   apply.  *JMP Sec. LLP v. Altair Nanotechnologies Inc*., 880 F. Supp. 2d 1020, 1035 (N.D. Cal.

16   2012) (citing *Fields v. Legacy Health Sys*., 413 F.3d 943, 950 (9th Cir. 2005)).  Because this Court

17   is sitting in diversity in California, it applies California's choice-of-law rules.

18         In *Nedlloyd Lines B.V. v. Superior Court*, the California Supreme Court set forth rules for

19   determining when contractual choice of law provisions should be enforced.  3 Cal. 4th 459, 466

20   (1992).  It explained that California applies the principles set forth in the Restatement (Second) of

21   Conflict of Laws, section 187, which provides that such provisions are generally enforced unless

22   1) the chosen state has "no substantial relationship to the parties or the transaction and there is no

23   other reasonable basis for the parties choice;" or  2) "application of the law of the chosen state

24   would be contrary to a fundamental policy of a state which has a materially greater interest than

25   the chosen state in the determination of the particular issue and which . . . would be the state of the

26   applicable law in the absence of an effective choice of law by the parties." *Id*.  However, in

27   *Nedlloyd*, the court applied the law of California (the forum state) because the parties had not

28   supplied the court with evidence of the relevant aspects of the law that was designated, Hong

United States District Court
Northern District of California

8

1  Kong law.  3 Cal. 4th at 469 n.7.  Similarly, the Ninth Circuit has noted that where the parties have

2  not proven the content of foreign law, courts typically apply the law of the forum state.  *See*

3  *Commercial Ins. Co. of Newark, N. J. v. Pacific-Peru Const. Corp.*, 558 F.2d 948, 952 (9th Cir.

4  1977) (citing Fed. R. Civ. P. 44.1; Restatement (Second) of Conflicts of Laws, § 136, comment h).

5  The reason for this approach is set forth in the Restatement, which explains:

6
7           [W]here either no information, or else insufficient information, has
            been obtained about the foreign law, the forum will usually decide
            the case in accordance with its own local law . . . . The forum will
8           usually apply its own local law for the reason that in this way it can
            best do justice to the parties . . .. When both parties have failed to
9           prove the foreign law, the forum may say that the parties have
            acquiesced in the application of the local law of the forum. . . ."

10 Restatement (Second) of Conflicts of Laws § 136, comment h.

11         Applying the principles of *Nedlloyd* and the Restatement discussed above, the Court

12 concludes that it is proper to apply California law in evaluating Plaintiff's claims.  Although the

13 choice of law provision in the Agreement specifies Singapore law,  Houser has not appeared to

14 enforce that provision and the record does not provide a sufficient basis for the Court to apply

15 Singapore law to the claims asserted in this action.  The Court also notes that the only evidence in

16 the record indicates that "Singapore's contract law principles closely follow those of Great Britain

17 and the United States. " Cohen Decl. ¶ 14.   Therefore, to the extent that *Eitel* affords the Court

18 discretion on this question, the Court finds that Houser is unlikely to be prejudiced by the

19 application of California law in evaluating his claims.[3]

20                          ii.  Breach of Contract Claim

21         In California, the elements of a cause of action for breach of contract are: 1) the existence

22 of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the

23 defendant; and 4) resulting damages to the plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal.

24 4th 811, 821 (2011) (citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)).

25 Plaintiff's breach of contract claim is deficient, both as to the pleadings and on the merits..

26
27 [3] Because the Court finds that it may rely on California law to evaluate Hrothgar's claims
   notwithstanding the parties' agreement to apply Singapore law, it need not address the scope of
28 the choice of law provision in the Agreement and in particular, whether it would, if enforced,
   govern not only Hrothgar's contract claim but also its tort claims.

1    While Plaintiff alleges in the Complaint that it entered into a contract with Houser, a

2    review of the Agreement reveals that the terms are so vague that the scope of the parties'

3    obligations cannot be determined.  Houser promises to render services described in a single

4    sentence in Appendix A: "To advise and manage on the acquisition and development of villa in

5    Bali."  Agreement, Appendix A.  The nature of these services is unclear.  In addition, the

6    Agreement purports to cover services that have not yet been determined, stating that the services

7    Houser will provide may be "amended by the Company from time to time at its discretion" and

8    that Houser will provide "such other services as may be agreed between the parties."  Agreement,

9    Section 1.1.  Hrothgar, in turn, promises to pay an unspecified fee which depends upon a yet-to-

10   be-determined "approved monthly budget."  *Id.*, Section 3.1 and Appendix A.   These vague

11   promises do not give rise to an enforceable contract, constituting at best, an agreement to agree.

12   *See California Lettuce Growers v. Union Sugar Co.,* 45 Cal. 2d 474, 481 (1955)(where a contract

13   is so uncertain and indefinite that the intention of the parties in material particulars cannot be

14   ascertained, the contract is void and unenforceable); *Autry v. Republic Prods.*, 30 Cal. 2d 144,

15   151-52, (1947) (en banc) (stating that "neither law nor equity provides a remedy for breach of an

16   agreement to agree in the future.  Such a contract cannot be made the basis of a cause of

17   action")(citations omitted).

18       Similarly, even assuming there was a valid contract between the parties, Plaintiff has not

19   alleged a breach because the Agreement contains no specific terms addressing the contractual

20   obligation that is alleged to have been breached.   Plaintiff alleges that Houser breached the

21   Agreement by "failing and refusing to return to Hrothgar at the expiration of the Agreement, funds

22   in the amount of $230,000 which Hrothgar deposited into the BII Account solely to be used to

23   resolve disputes with Lisa Liliana and Mark Savage with respect to title and ownership of the land

24   on which the Villa Complex was to be situated."  Compl. ¶ 14.  There is no specific term in the

25   contract addressing how these funds were to be used or the circumstances under which Houser

26   would be required to return them.  Further, to the extent the Agreement envisioned that not only

27   the funds for acquiring the Bali Complex but also Houser's fee and "expenses" would be

28   deposited into the BII account, *see* Agreement, Preamble ¶¶ B & C, Section3.2, the allegation that

United States District Court
Northern District of California

the funds at issue were transferred to that account is not sufficient to establish that Houser's failure to return them constituted a breach of any particular term in the Agreement.  The Court also notes that although Hrothgar alleges that Houser failed to return the funds at the expiration of the Agreement, the evidence attached to the Verdicchio Declaration - an email dated November 9, 2012 in which Houser informed Hrothgar of the amount Mark Savage was seeking in settlement of his dispute with Hrothgar  - appears to indicate that Hrothgar advanced the $230,000 to Houser *after* the one-year term of the Agreement had already expired.  Nor is there any allegation or evidence that the parties extended the term of the Agreement in writing, as is required under Section 2.2 of the Agreement.

The Court therefore concludes that any obligation owed to Hrothgar by Houser is not contractual in nature but rather, sounds in tort, as discussed below.  Therefore, the breach of contract claim does not support entry of default judgment against Houser and should be dismissed with prejudice.

iii. Fraud

To state a claim for actual fraud under California law, a plaintiff must plead an intentional misrepresentation of material fact (which may be a false representation, concealment or nondisclosure) with knowledge of its falsity and intent to induce reliance, actual reliance, and damages proximately caused by the reliance.  *Robinson Helicopter Co. v. Dana Corp*., 34 Cal. 4th 979, 990 (2004) (citation omitted);  Cal. Civ. Code, §§ 1709, 1710.  In addition, in federal courts, a claim for fraud must meet the heightened pleading standard set forth in Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy this requirement, "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Patriotic Scientific Corp. v. Korodi*, 504 F. Supp. 2d 952, 965 (S.D. Cal. 2007) (quotations and citations omitted).

Hrothgar does not sufficiently allege the elements of fraud to satisfy the requirements of Rule 9(b).  The Complaint contains a conclusory allegation that "Houser promised to use the sum of $230,000.00 United States Dollars deposited via telegraphic transfers to the BII Account solely

United States District Court
Northern District of California

1  to resolve disputes with Lisa Liliana and Mark Savage with respect to title and ownership of the

2  land on which the Villas Complex was to be situated."  Complaint ¶ 30; *see also* Diggle Decl.

3  ¶ 22. The Complaint does not, however, address the circumstances under which this alleged

4  misrepresentation was made, that is, the time, place or specific content of Houser's statements; nor

5  does it identify the individual to whom the representations were made.  Further, in light of the

6  heightened pleading requirements under Rule 9(b), the Court finds that Hrothgar's conclusory

7  allegations are not sufficient to show that Houser made any particular statement with knowledge at

8  the time the statement was made that it was false and with the intent to induce reliance.  Therefore,

9  this claim does not support the entry of default judgment against Houser and should be dismissed

10  with prejudice.

11                                   iv.  Conversion

12          In California, the elements of conversion are: "1) plaintiff's ownership or right to

13  possession of property; 2) defendant's wrongful disposition of the property right; and 3)

14  damages."  *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981) (quoting

15  *Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979)).  "Money cannot be the subject of

16  a cause of action for conversion unless there is a specific identifiable sum involved, such as where

17  an agent accepts a sum of money to be paid to another and fails to make the payment."  *Natomas*

18  *Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010) (citing *PCO,*

19  *Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384,

20  395 (2007)).  "Conversion cases permitting an action for conversion of money typically involve

21  those who have misappropriated, commingled, or misapplied specific funds held for the benefit of

22  others . . . [where] the amount of money converted was readily ascertainable."  *Id.* (quoting *PCO,*

23  *Inc.*, 150 Cal. App. 4th at 396).  A claim for conversion may give rise to a right to restitution under

24  a quasi-contract theory, whereby the law will imply a contract to avoid unjust enrichment.   *See*

25  *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).  Restitution under a quasi-contract

26  theory may be available even if there is an express contract if the contract is void or unenforceable

27  for some reason.  *Id.*   The statute of limitations for conversion is three years.  *See* Cal. Code Civ.

28  Proc. § 338(c)(1).

United States District Court
Northern District of California

As discussed above, the contract here is unenforceable and therefore, a claim for conversion is available to Hrothgar.  Further, Hrothgar has alleged all of the elements of a claim for conversion.  In particular, it has alleged that it deposited into an account in Houser's name a sum of money that is "readily ascertainable"– $230,000  - and that was to be held in trust for Hrothgar's and used for  its benefit, namely, to resolve a dispute relating to the acquisition of property in Bali.  Hrothgar further alleges that Houser did not use the funds for the intended purpose and has refused to return the money, despite Hrothgar's demands that he do so.  Hrothgar has also provided evidence that the $230,000 was, in fact, deposited in Houser's BII account and that Houser understood that the funds were to be paid to Mark Savage to resolve a dispute between Savage and Hrothgar.  Finally, the claim is timely because all of the relevant events relating to the alleged conversion occurred within three years of the filing of the complaint, on March 10, 2015.

Therefore, Hrothgar's conversion claim supports its request for entry of default judgment.

### v.  Money Had and Received

"A cause of action for money had and received arises when the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013) (internal quotations and citations omitted).  The plaintiff's right to recover "is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain." *Rotea v. Izuel*, 14 Cal. 2d 605, 611 (1939) (citing *Pollack v. Staunton*, 210 Cal. 656, 665, 293 P. 26, 30 (1930)).  The limitations period for a claim of money had and received is two years. *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1280 (C.D. Cal. 2015) (citing Cal. Code Civ. Proc. § 339(1) (two-year period for liabilities not founded on written instruments); *Warren v. Lawler*, 343 F.2d 351, 360 (9th Cir.1965) ("the theory of money had and received [is an] action on an implied contract" and is subject to the two-year statute of limitations period in Cal.Code Civ. Proc. § 339(1))).

While Hrothgar may state a claim for money had and received, this claim is untimely.  The latest date this claim could have accrued is November 30, 2012 - the date when Hrothgar first demanded that Houser return the $230,000.  *See* Complaint ¶ 11.  As noted above, the Complaint

1    was filed on March 10, 2015, more than two years later.  Therefore, this claim does not support

2    entry of default judgment and should be dismissed with prejudice.

3                                    vi.  Conclusion

4         Hrothgar's claims for fraud, breach of contract and money had and received are deficient

5    for the reasons stated above and therefore, these claims do not support entry of default judgment.

6    On the other hand, Hrothgar has stated a claim for conversion and offered some evidence that it

7    would likely have prevailed on that claim.  Therefore, this factor favors entry of default judgment,

8    at least as to the conversion claim.

9                             c.   Amount of money at stake

10        The fourth *Eitel* factor balances the amount of money at stake in the claim in relation to the

11   seriousness of the defendant's conduct.  *Eitel*, 782 F.2d at 1471-72.  Here, the amount of money

12   sought is substantial, but consistent with Funds Hrothgar alleged it transferred to  Houser.

13   Therefore, this factor favors entry of default judgment.

14                            d.   Possibility of dispute

15        The fifth *Eitel* factor weighs the possibility that material facts may be in dispute.  *Eitel*,

16   782 F.2d at 1471-72.  In light of the allegation that Houser has "acknowledged receipt of

17   Hrothgar's communications [ ] and repeatedly promised to refund $230,000 to Hrothgar," *see*

18   Complaint ¶ 11, the Court finds that  this factor favors entry of default judgment.

19                            e.   Possibility of excusable neglect

20        The sixth *Eitel* factor weighs whether the defendant's default may have been the product of

21   excusable neglect.  *Id.*  Here, Houser was properly served, and there is no indication that Houser's

22   default was due to excusable neglect.  This factor therefore favors entry of default judgment.

23                            f.   Policy in favor of judgment on the merits

24        Finally, the seventh *Eitel* factor considers the policy that generally disfavors default

25   judgments because "cases should be decided upon their merits whenever reasonably possible."  *Id.*

26   at 1472.  However, a resolution of the dispute on the merits it not possible because Houser has

27   failed to appear.  Therefore, this factor favors entry of default judgment.

28

United States District Court
Northern District of California

g.   Conclusion

Considered together, the *Eitel* factors favor entry of default judgment against Houser as to the claim for conversion.  The remaining claims should be dismissed with prejudice.

**C.    Damages**

Having determined that entry of default judgment is warranted, the Court now must determine the appropriate remedy.  *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Under Rule 54(c), the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Further, a plaintiff seeking default judgment "must 'prove up' the amount of damages that it is claiming."  *Philip Morris USA, Inc. v. Castworld Products,Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003).  Finally, the Court looks to law governing the remedies available on a claim for conversion as that is the single claim that was adequately alleged.

a.   Principal Sum

Where a plaintiff prevails on a conversion claim involving a specific sum of money, the Court may award as damages the amount that was subject to the conversion.  *See Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010);  5 Witkin, Cal. Proc. 5th (2008) Plead, § 702, p. 118 ("The tort of conversion gives the plaintiff alternative remedies of recovery of possession or the value of the property taken").  Hrothgar has submitted evidence of the amount subject to conversion, namely, the declaration of Hrothgar's principal, Steve Diggle, that Hrothgar wired $230,000.00 to the BII Account in Houser's name.  Diggle Declaration ¶ 8.  Therefore, the principal amount of $230,000 that is requested by Hrothgar should be awarded in full.

b.   Prejudgment Interest

Where damages have been awarded on a conversion claim, the plaintiff is also entitled to an award of prejudgment.   See Cal. Civ. Code § 3336 (providing that "[t]he detriment caused by the wrongful conversion of personal property is presumed to be . . .[t]he value of the property at the time of the conversion, with the interest from that time . . . and . . ."[a] fair compensation for the time and money properly expended in pursuit of the property") (emphasis added); *Moreno v.*

United States District Court
Northern District of California

*Greenwood Auto Ctr.*, 91 Cal. App. 4th 201, 203 (2001) (citing Cal. Civ. Code §§ 3336, 3287(a)).

Because there is no statutory provision that specifies the rate of prejudgment interest on

conversion claims, the rate of 7% set forth in the California Constitution applies (rather than the

10% rate requested by Hrothgar).  *Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577, 582-83 (C.D.

Cal. 1986) (holding in a case involving a claim for conversion that "[t]he legal rate of interest in

California, absent a statute to the contrary (and there is none here), is seven percent per annum")

(citing Cal. Const. art. XV, § 1; *Pacific-Southern Mortgage Trust Co. v. Ins. Co. of North

America*, 166 Cal.App.3d 703).

Applying the 7% interest rate to the $230,000 principal amount from November 30, 2012

to the date of this Report and Recommendation, using simple interest,[4] the Court finds that

Hrothgar is entitled to $43,712.60 in prejudgment interest.

### c.   Costs

Under Cal. Civ. Code § 3336, Hrothgar is also entitled to its costs.  Similarly, under Rule

54(d)(1) of the Federal Rules of Civil Procedure Hrothgar is entitled to its costs as the prevailing

party.   Hrothgar has requested an award of $651.50 in costs, consisting of $400.00 for its filing

fee in this action and $251.50 incurred in connection with service of the complaint and has offered

a declaration attesting to these amounts.  *See* Cohen Decl. ¶ 13.  Therefore, the undersigned

recommends granting costs in the amount of $651.50.[5]

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends GRANTING the Motion.  It is further

recommended that the Court enter default judgment based on Hrothgar's claim for conversion,

dismiss with prejudice its claims for breach of contract, fraud and money had and received, and

---

[4] The Court notes that under California law, interest may not be compounded unless specifically authorized  by statute.  *Westbrook v. Fairchild*, 7 Cal. App. 4th 889, 894 (1992) (citations omitted).  The Court finds no such authority here.
[5] Although Plaintiff does not expressly request postjudgment interest in the Motion, it includes language in its proposed order stating that postjudgment interest shall be awarded at the rate of .27 % per annum from the date of judgment.  *See* Docket No. 20-1.  Pursuant to 28 U.S.C. § 1961, Hrothgar is entitled to postjudgment interest by operation of law at the federal rate applicable under that provision.  The Court therefore need not include in its final judgment the language offered by Hrothgar in its proposed order addressing postjudgment interest.

award the following amounts in damages: 1) $230,000 in principal; 2) $43,712.60 in prejudgment interest; and 3) $651.50 in costs.

Dated: August 18, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge